UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - -

UNITED STATES OF AMERICA,

        Plaintiff,

v.

RICHARD ANTHONY REYNA DENSMORE
(a/k/a "Rabid"),

        Defendant.
_____/

No. 1:24-cr-7

Hon. HALA Y. JARBOU
Chief U.S. District Judge

**EMERGENCY MOTION FOR REVOCATION OF ORDER OF RELEASE**

Defendant organized and ran an online forum for users to create, distribute, and stream child pornography featuring self-harm. Investigators found images on Defendant's cell phone depicting a child with Defendant's username, "Rabid," written on her forehead and a girl cutting the letter "R" into her legs.

Despite the substantial danger that Defendant poses to the community and the presumption in favor of detention, Defendant was released on bond. The United States moves this Court to conduct a de novo review of the order to release entered by United States Magistrate Judge Ray Kent and revoke that order pursuant to 18 U.S.C. § 3145(a)(1).

*Indictment & Arrest*

1.    On January 23, 2024, the Grand Jury returned an indictment charging Defendant with (1) Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a)

and (e); (2) Conspiracy to Sexually Exploit a Child, in violation of 18 U.S.C. § 2251(a) and (e); (3) Coercion and Enticement, in violation of 18 U.S.C. § 2422(b); (4) Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2); and (5) Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). (ECF No. 1.)

2. Count 1 alleges that Defendant "directed another user on Discord, an internet application, to have [a minor child] take a picture or video exposing her genitals or pubic area." (PageID.1.) The minor did so and Defendant received the video via the internet. (*Id.*)

3. On January 31, 2024, law enforcement arrested Defendant and he made his initial appearance in this Court. (PageID.18.) He was ordered temporarily detained on the government's motion. (*Id.*)

4. This presumption of detention applies when a judicial officer finds that there is probable cause to believe that the person committed a violation of 18 U.S.C. § 2251(a) and 2522. "A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged" for purposes of triggering the presumption. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

5. Accordingly, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(E).

*Pretrial Services Report*

6.U.S. Probation prepared a pretrial services report ("PTSR") documenting several facts and circumstances relevant to detention.

7.At the time of his arrest, Defendant possessed a firearm in his home. (PageID.26.)[1]  Defendant also has a crossbow in his home that was not confiscated. (*Id.*)

8.There is at least one internet enabled device in Defendant's home, a Nintendo Switch.  (PageID.26.)

9.Probation documented Defendant having only one job after leaving the military, which he started in August 2023.  (PageID.26.)

10.Defendant reported that he has used marijuana for more than 30 years, and, before arrest, did so on a weekly basis.  (PageID.27.)  He also drinks alcohol monthly.  (*Id.*)

11.The report documented Defendant's extensive mental health history. (PageID.27.)  Defendant "was formally diagnosed with schizophrenia and borderline personality disorder during his time in the military." (*Id.*)  He also "believes he suffers from manic depression but has not been formally diagnosed." (*Id.*) Defendant was previously prescribed medication to treat his ongoing mental health issues, but had "suicidal feelings." (*Id.*)  He attempted suicide on at least one occasion. (*Id.*)  He is currently unmedicated. (*Id.*)

---

[1] The PTSR inaccurately suggested that police seized the gun from the home.  The government corrected this at the detention hearing and proffered that the rifle, with ammunition, was still there.

12. Defendant admitted that he had previously been convicted of a crime under the Holmes Youthful Trainee Act ("HYTA") but refused to answer any questions about the nature of the offense. (PageID.28.) Probation has not yet been able to find further information. (*Id.*)

13. Probation recommended the Defendant be released on home detention pending trial, but acknowledged that was "separate from" the presumption of detention and the evidence of the charged offense, which the Court characterized as "fairly heavy." (PageID.28.)

*Detention Hearing*

14. On February 5, 2024, Magistrate Judge Ray Kent heard the government's motion for detention. The government presented testimony regarding the following.

15. The Federal Bureau of Investigation ("FBI") National Threat Operations Center ("NTOC") received complaints in August 2022 that a Discord user, "Rabid," was grooming minors to create child pornography and engage in self-harm.

16. Investigators identified "Rabid" as Defendant.

    a. Police received a video from a minor victim that showed "Rabid," on the left below. The image on the right is a Secretary of State photo of Defendant.




b. Investigators executed a search warrant at Defendant's home and seized a piece of paper with the word, "Rabid," as well as hard copies of documents that Rabid provided to other users.



c.      A minor victim reported to investigators that she met Rabid on Discord in or around August 2022. She was 15 years old at the time and told Rabid that she was a minor. The girl knew that Rabid's first name was "Richard." Rabid told her that he created a Discord server or chat room called "Sewer." The primary purpose of Sewer was to stream child pornography and self-harm content. Rabid told the girl to solicit people to stream content on Sewer. The girl streamed a video of herself on Sewer in which she inserted an ice cube into her vagina. Investigators found a copy of this video on Defendant's cell phone when they seized it in February 2023.

17.     Densmore's cell phone also contained material relating to 764, a group

with which Densmore claimed affiliation. 764 is a group dedicated to obtaining and sharing self-harm content and child pornography. The following information comes from an FBI public service announcement and was admitted at the detention hearing:

**VIOLENT ONLINE GROUPS**

The violent online groups use many names, including 676, 764, CVLT, Court, Kaskar, Harm Nation, Leak Society, and H3ll, but continuously evolve and form subgroups under different monikers. They operate on publicly available platforms, such as social media sites or mobile applications. To gain access to a majority of these groups, prospective members are required to live-stream or upload videos depicting their minor victims harming animals or committing self-harm, suicide, murder, or other acts of violence. The key motivators of these groups are to gain notoriety and rise in status within their groups.

**TARGETING**

The groups target minors between the ages of 8 and 17 years old, especially LGBTQ+ youth, racial minorities, and those who struggle with a variety of mental health issues, such as depression and suicidal ideation.

**EXTORTION AND SELF-HARM**

The groups use extortion and blackmail tactics, such as threatening to SWAT[1] or DOX[2] the minor victims, if they do not comply with the groups' requests, manipulate and extort minors into producing CSAM and videos depicting animal cruelty and self-harm. Self-harm activity includes cutting, stabbing, or fansigning[3]. Members of the groups threaten to share sexually explicit videos or photos of the minor victims with their family, friends, and/or post to the internet. The groups control their victims through extreme fear and many members have an end-goal of forcing the minors they extort into committing suicide on live-stream for their own entertainment or their own sense of fame.

(Gov't Det Ex. 6.)

18. Investigators executed a second search warrant at Defendant's home in January 2024 and found two cell phones hidden in an air vent in Defendant's bedroom. Those phones have not yet been fully extracted or analyzed. However, an initial partial review yielded additional material that is consistent with the 764 group. Additionally, investigators found images on one of the phones that include a

girl with "Rabid" written on her forehead, and cutting (pictures of lines cut into a girl's legs and the letter "R," bleeding, cut into a woman's chest).[2]

19. The HYTA conviction that Defendant refused to discuss was from 1997 and for criminal sexual conduct.

20. The government argued that Defendant demonstrated violent proclivities, including interests in child pornography and having people cut themselves, that are exacerbated by the fact that he keeps guns, ammunition, and other weapons in his house.

21. At the conclusion of the hearing, United States Magistrate Judge Ray Kent indicated that he intended to deny the government's motion for detention, in part relying on the fact that there were no allegations that Defendant was a "hands on" offender. This, however, ignores the immeasurable harm that he can inflict, and has inflicted, over the internet. Probation cannot assure that Defendant does not use the internet. At best, an officer could seize a device after the fact if Probation discovers the violation. It is notable that even after law enforcement searched Defendant's home in February 2023, and Defendant was therefore aware that he was being investigated, he still got new devices and used them to possess self-harm and "Rabid" imagery, which was discovered in the January 2024 search.

22. As indicated above, there is a rebuttable presumption in this case that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E).

---

[2] These images were admitted as Exhibit 5 at the detention hearing.

In ruling, the Court did not make specific factual findings, and did not state how Defendant rebutted this statutory presumption of detention.

23. The United States has ordered an expedited transcript of the detention hearing.

24. "If a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order." 18 U.S.C. § 3145(a)(1). The Court applies a *de novo* standard of review. *See United States v. Hernandez*, No. 1:21-mj-551-RSK-HYJ (R.95, PageID.329) (W.D. Mich. Nov. 16, 2021); *United States v. Martinez*, No. 1:12-cr-210, 2012 WL 4815018 (W.D. Mich. Oct. 10, 2012); *United States v. Williams*, 948 F. Supp. 692, 693 (E.D. Mich. 1996); *United States v. Franks*, No. 1:20-mj-416, 2020 WL 8615366, at *1 (W.D. Mich. Nov. 19, 2020).

25. Therefore, the government respectfully requests that the Court exercise its authority under 18 U.S.C. § 3145 by conducting a de novo review of the PTSR and the evidence presented at the detention hearing and reversing the magistrate judge's release order and detain Defendant pending trial.

                    Respectfully submitted,

                    MARK A. TOTTEN
                    United States Attorney

Dated: February 6, 2024        */s/ Adam Townshend*
                    ADAM TOWNSHEND
                    Assistant United States Attorney
                    P.O. Box 208
                    Grand Rapids, Michigan 49506
                    (616) 456-2404