```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF MICHIGAN
 2                       SOUTHERN DIVISION

 3

 4    UNITED STATES OF AMERICA,

 5                    Plaintiff,

 6    vs.                              Case No.  1:24-cr-7

 7    RICHARD ANTHONY REYNA DENSMORE,

 8                    Defendant.
      _____/
 9
                      SENTENCING HEARING
10
             BEFORE THE HONORABLE HALA JARBOU
11               United States District Judge

12         Lansing, Michigan, Thursday, November 7, 2024

13

14    APPEARANCES:
      For the Plaintiff:    ADAM B. TOWNSHEND
15                          U.S. Attorney
                            330 Ionia Ave., NW
16                          Grand Rapids, MI 49501-0208
                            (616) 456-2404
17
      For the Defendant:    CHRISTOPHER M. GIBBONS
18                          Gibbons & Boer
                            2404 Eastern Ave., SE
19                          Grand Rapids, MI 49507
                            (616) 460-1587
20
      REPORTED BY:          TRISHA N. CAMERON, CSR, RMR, CRR, RDR
21                          Federal Official Court Reporter
                            128 Federal Building
22                          Lansing, Michigan 48933

23

24

25
```

1   Lansing, Michigan

2   November 7, 2024

3   10:07 a.m.

4                          *PROCEEDINGS*

5           THE CLERK:  All rise.  The United States District

6   Court for the Western District of Michigan is now in session.

7   The Honorable Hala Jarbou, Chief District Judge, presiding.

8   Thank you.  You may be seated.

9           Now calling the United States versus Richard

10  Densmore, Case No. 1:24-cr-7.

11          THE COURT:  All right.  Good morning.  Can I have

12  appearances, please.

13          MR. TOWNSHEND:  Good morning, Your Honor.  Adam

14  Townshend on behalf of the United States.  With me at counsel

15  table is Special Agent Justin Hall from the FBI.

16          THE COURT:  Good morning, both of you.

17          MR. GIBBONS:  Good morning, Your Honor.  Christopher

18  Gibbons on behalf of the defendant Richard Densmore, who is

19  seated to my right.

20          THE COURT:  All right.  Good morning, Mr. Gibbons.

21  And good morning, Mr. Densmore.

22          THE DEFENDANT:  Hi.

23          THE COURT:  Mr. Densmore, can you hear me?

24          THE DEFENDANT:  Yes.  Hello.

25          THE COURT:  All right.  Thank you.  This is the date

1    and time set for sentencing.  I have reviewed the Presentence

2    Investigation Report, the defendant's motion for a variance,

3    defendant's memorandum in support for the motion for the

4    variance and sentencing, the government's sentencing

5    memorandum in opposition to the downward variance, and the

6    government's supplemental statement regarding restitution and

7    financial assessment.  So there are a few things that we need

8    to address.

9         But this was a plea back in July, July 18th of 2024,

10   to Count 1, sexual exploitation of a child, pursuant to a plea

11   agreement, I believe.

12        Is that correct, Mr. Townshend,

13   Mr. Gibbons?

14        MR. TOWNSHEND:  That's correct, Your Honor.

15        THE COURT:  Okay.  And I will accept that plea

16   agreement at this time.

17        All right.  There is one objection that we need to

18   resolve, and there's also -- I just want to clear up the

19   restitution and assessment issue, as well.

20        So let's start with the objection.  Mr. Gibbons, you

21   have an objection to the five-level enhancement pursuant to

22   4B1.5(b)(1), correct?

23        MR. GIBBONS:  That is correct, Your Honor.

24        THE COURT:  Okay.  Is there -- well, tell me if

25   there's anything else you want to say as it relates to that.

1      MR. GIBBONS:  No.  I think it's all adequately

2  explained in the sentencing memorandum, Your Honor.

3      THE COURT:  Okay.  So your position basically is that

4  he doesn't have a scorable criminal history but -- so there

5  are no prior convictions.  I mean, he has, I believe, a

6  CSC 4th degree, but that was successfully completed under HYTA

7  when he was about 20 years old.  But there's no prior

8  convictions, and, therefore, 4B1.5(b)(1) does not apply.

9      MR. GIBBONS:  That is my thought, Your Honor.  That,

10  and given the fact that the pattern of facts that would

11  support the enhancement all arise out of the conduct for which

12  he is answering here today, which could mitigate the

13  application.

14      As I conceded in my memorandum, I do think that there

15  are adequate grounds to apply the enhancement, but given the

16  severity, five levels is a lot of time.  I just want to make

17  sure my client's rights are preserved and protected in the

18  event something should happen with the higher courts that

19  could open clearer avenues of relief for my client.

20      THE COURT:  Okay.  Mr. Townshend, anything you want

21  to say in response to that?

22      MR. TOWNSHEND:  Yes, Your Honor.  So just so I'm

23  clear and the record's clear, there are two different bases

24  for this enhancement under Section 4B1.5.

25      You have 4B1.5(a), which relates to a prior

1      conviction.  That is not what we're proceeding under.

2              4B1.5(b) concerns the enhancement with respect to a

3      pattern of prohibited sexual conduct.  That is what the

4      probation office is recommending the enhancement under, and

5      that is what applies here.

6              Just to summarize the government's position, the

7      defendant's conviction is a covered sex crime, as it's defined

8      in that guideline.  Sections 4B1.1 and 4B1.5(a) of the

9      guidelines do not apply here.

10              And as the government explained in its sentencing

11     memorandum, Mr. Densmore did engage in a pattern of activity

12     involving prohibited sexual conduct.  As we briefed, that

13     includes -- the pattern of conduct is two separate occasions

14     that includes the offense of conviction.  Here there were two

15     other occasions of prohibited sexual conduct.

16              One is covered in the PSR, and that's the production

17     of child pornography regarding another victim who we've

18     identified as Jane Doe 2.  That's paragraphs 13 and 14 of the

19     PSR.  Mr. Densmore solicited and received sexual --

20     sexually-explicit material from that minor.

21              Also, as we briefed and we demonstrated through the

22     exhibits that this Court has, which we included in our

23     exhibits, Mr. Densmore also advertised child pornography and

24     sexually-explicit conduct by minors in other Discord chat

25     rooms.  That's a violation of 18 USC 2020 -- excuse me.

1    2251(d), also another occasion of prohibited sexual conduct

2    under the guideline.

3         So the government's position is that all three

4    elements of that enhancement are met here, and the Court

5    should apply that five-level enhancement.

6         THE COURT:  All right.  In looking at 4B1.5(b)(1), as

7    indicated, it applies where the offense is a covered sex crime

8    and that Defendant engaged in a pattern of activity involving

9    prohibited sexual conduct.  I think all those instances that

10   the government just outlined certainly qualifies as a pattern,

11   and the charge in and of itself qualifies under 4B1.5(b)(1).

12        I will note in terms of the arguments, as it relates

13   to multiple acts with a singular victim, there's Sixth Circuit

14   case law on point as to that, first, and also, that it doesn't

15   have to be a conviction.

16        So United States versus Hollon, H-o-l-l-o-n,

17   948 F.3d 753 at 758 through 759, a 2020 Sixth Circuit case,

18   indicates 4B1.5(b)(1) applies even when an individual has no

19   related criminal convictions.  4B1.5(b)(1) also applies when

20   the defendant engaged in multiple prohibited sexual acts

21   towards a singular victim.

22        United states versus Paauwe, P-a-a-u-w-e,

23   968 F.3d 614 at 618, a 2020 Sixth Circuit case.  That case

24   indicating that 4B1.5 takes aim at multiplicity in acts, not

25   multiplicity in victims.

1    United States versus Brown, 634 Federal Appendix 477

2    at 482, 2015 Sixth Circuit case.  That case indicates that,

3    quote, the current version of 4B1.5 applies when the defendant

4    has engaged in at least two separate occasions of prohibited

5    conduct with a minor, even if those separate occasions are

6    with the same victim.

7    United States versus Brattain, B-r-a-t-t-a-i-n,

8    539 F.3d 445 at 448, a 2008 Sixth Circuit case, make it clear

9    that the enhancement applies to prohibited sexual acts towards

10   a singular victim.

11   So I think the case law is pretty clear.  And I

12   understand, Mr. Gibbons, your purpose in bringing that up, but

13   the objection is overruled.

14   All right.  Mr. Townshend, you filed something as it

15   relates to restitution and financial assessment.  So let's

16   clear up what it is that he's charged with, what's applicable

17   in terms of restitution and/or these assessments.

18   MR. TOWNSHEND:  Thank you, Your Honor.  I appreciate

19   your consideration of the late filing.  I caught that in

20   preparation for sentencing today.

21   I should be clear, I think -- I think the only change

22   here is to restitution.  The PSR, again, classifies the

23   offense of conviction here sexual exploitation under

24   Section 2020 -- 2251(a) as a trafficking offense.  If that's

25   true, the mandatory restitution provision at

1    18 USC 2259 requires a minimum of $3,000 in restitution.

2    That's 18 USC 2020 -- 2259(b)(2)(B).

3        I think it's clear from the statutory text that the

4    offense of conviction, 2020 -- excuse me.  I keep falling over

5    that.  2251(a) is not a trafficking offense.  It's a child

6    pornography production offense, meaning restitution under --

7    mandatory restitution under 18 USC 2259 is limited to the full

8    amount of the victim's losses, not that -- not that floor of

9    $3,000 that the PSR recommends.  I think that's really the

10   most meaningful change here.

11       And, again, as we indicated in our filing, we haven't

12   received any victim impact statements or responses to our

13   outreach to victims.  So I wanted to make sure that the Court

14   was clear that from the government's point of view, it does

15   not apply the mandatory $3,000 floor in restitution, but

16   instead refers to the full amount of victim losses in making

17   that determination.

18       THE COURT:  Right.  And as you've indicated and what

19   I've read, there has not been any submission by any victim as

20   to any loss, correct?

21       MR. TOWNSHEND:  That's correct, Your Honor.  And as

22   we also briefed in terms of -- again, this doesn't affect the

23   applicability of any other assessments in this case.  But as a

24   child pornography production offense, there is that fine of up

25   to $50,000.  That is referenced in the PSR.  But as a child

1    pornography production offense, that's that fine range with

2    respect to that conduct.

3         THE COURT:  All right.  So that only really affects

4    just the $3,000, not the JVTA or any of the other assessments,

5    correct?

6         MR. TOWNSHEND:  That's correct, Your Honor.

7         THE COURT:  All right.  Mr. Gibbons, any response or

8    any issue with that?

9         MR. GIBBONS:  I have nothing meaningful to add, Your

10   Honor.  I'm in agreement.

11        THE COURT:  All right.  Thank you.

12        MR. TOWNSHEND:  Your Honor, may I address one other

13   thing?

14        THE COURT:  Sure.

15        MR. TOWNSHEND:  I think one other preliminary issue

16   is, as the Court is well aware, the 2024 version of the

17   guidelines took effect a few days ago on November 1st.  The

18   government has reviewed the 2023 guidelines under which the

19   PSR was prepared and compared that to the 2024 guidelines

20   manual.  As I see it, Your Honor, there's no difference in the

21   calculation of the guidelines there.  I think the only

22   difference between the guidelines as applicable to this case

23   is the definition of a sex offense under the 0 point offender

24   adjustment, and that's Section 4C1.1.

25        Under either the 2023 version of the guidelines or

1    the 2024 version of the guidelines, Mr. Densmore is not

2    eligible for a 0 point offender adjustment because this is a

3    sex offense and it was perpetrated against a minor.

4            And so, again, I don't think there's any difference

5    in the application of that guideline as between the two

6    versions, but I wanted to make the Court aware of that.

7            THE COURT:  Thank you.  It's always good to make a

8    clear record of that.

9            Mr. Gibbons, any input as to that issue?

10           MR. GIBBONS:  Satisfied, Your Honor.

11           THE COURT:  Okay.  All right.  Thank you.

12           All right.  Well, in terms of the guidelines -- but

13   before we get to that, Mr. Gibbons, have you had an

14   opportunity to discuss and share with him and read through the

15   Presentence Investigation Report with Mr. Densmore?

16           MR. GIBBONS:  Yes, Your Honor.  I've had the

17   opportunity to review both the Initial Presentence Report with

18   Mr. Densmore, as well as the final report prior to sentencing

19   today.

20           THE COURT:  All right.  Thank you.

21           Mr. Densmore, have you had an opportunity to read

22   through the whole Presentence Investigation Report and to

23   discuss that with Mr. Gibbons?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Could you hear and understand him during

1    those discussions?

2            THE DEFENDANT:  Yes.

3            THE COURT:  If you had any questions, did he answer

4    those questions to your satisfaction?

5            THE DEFENDANT:  He answered everything.

6            THE COURT:  Okay.  And are you overall satisfied with

7    his advice and his representation?

8            THE DEFENDANT:  Yes.

9            THE COURT:  All right.  The defendant was scored

10   initially at a base offense level of 32.  Two levels were

11   added since the offense involved the commission of a sexual

12   act.  Another two levels because the defendant knowingly

13   engaged in distribution.  Another two levels pursuant to

14   2G2.1(b)(6) as it relates to producing sexually-explicit

15   material for the purposes of transmitting that material live

16   and the involvement of a computer or other interactive

17   computer service.  There was a Chapter 4 enhancement.  Before

18   that Chapter 4 enhancement, there was an adjusted offense

19   level of 38.  The Chapter 4 enhancement, which dealt with the

20   objection that we just dealt with that I overruled, increased

21   that to a level 43.  There were three levels deducted for

22   acceptance of responsibility.

23            I assume you're still making that motion.

24            MR. TOWNSHEND:  Yes.  We'll move for that third

25   point, Your Honor.

1    THE COURT:  All right.  The Court will grant that.

2    That yields a total offense level of 40.  With a

3    criminal history score of 0 and a criminal history category

4    of I, the guideline range is 292 to 365 months.  The statutory

5    maximum is 360 months.  So the guidelines will be reduced to

6    292 to 360 months.

7    Is everyone in agreement with that guideline

8    determination?  Obviously subject to the objection that you

9    have preserved.

10    MR. TOWNSHEND:  The government agrees, Your Honor.

11    MR. GIBBONS:  Yes, Your Honor.  That is correct.

12    THE COURT:  All right.  Thank you.

13    Mr. Townshend, from what you just told me in terms of

14    victim submissions, are there any victims that are here today,

15    or have you received any victim impact statements?

16    MR. TOWNSHEND:  There are no victims here today,

17    Your Honor.  We have not received any victim impact statements

18    in response to our outreach.

19    THE COURT:  All right.  Thank you.

20    Mr. Gibbons, I'm going to start with you because

21    there's also a motion for a variance, and I think most of that

22    basis is a 3553(a) argument.  But I'll let you make that and

23    have the government respond.

24    MR. GIBBONS:  Thank you, Your Honor.  I know that the

25    Court has had an opportunity to review the sentencing

1    memorandum that I've submitted on behalf of Mr. Densmore.  I

2    don't have much more to add other than what's in that

3    memorandum, but I would like to highlight just a couple things

4    from the memorandum, things that I think are significant on

5    behalf of my client as he stands here today accounting for his

6    behavior.

7            He has for the majority of his life lived a law

8    abiding lifestyle.  He is honorably discharged from the

9    military.  He has the ability to conform and to follow the

10   rules and to not break the law.

11           He understands that he has offended in a way here

12   that's going to result in a significant prison sentence and

13   that the outcome today is likely to be severe.  He has not

14   resisted the outcome.  He understands that he has done things

15   that people really ought not do, and he understands that there

16   is a significant penalty for the types of things that he has

17   done.

18           He is asking the Court to consider the fact that he

19   does have family support.  At some point, he will be released

20   from prison, if he lives long enough.  He is in his mid 40s.

21   The guidelines are suggesting sentences that will have him

22   returning to his community before he reaches the age of 70.

23   He is hoping when he gets out that his family, they promise to

24   be there for him.

25           They understand -- one of the letters I think was

1    striking, that they had a family meeting about what to do with

2    regard to Mr. Densmore and his behavior, and they elected to

3    write a letter of support for him out of their love for him as

4    a family member and understanding and having seen some of the

5    things about his life that are separate from his conduct in

6    this case, where he has been for the most part a quiet person

7    living out a life pretty much in Bear Lake, Michigan, being a

8    helpful person to people that he engages with.  Although, the

9    conduct in this case is deplorable.  There's just no other way

10   around it.

11          So I would ask the Court to consider those things in

12   fashioning a sentence here that is sufficient but not greater

13   than necessary to meet the ends of sentencing.

14          In addition, I would ask the Court to recommend that

15   he be placed with the Bureau of Prisons at a place -- there

16   are facilities that handle and provide safe places for sex

17   offenders while they're incarcerated.  I would ask that he be

18   placed at such a facility.  And when he is at that facility,

19   my client is desirous of mental health treatment.  Obviously

20   he has some issues that he needs to deal with, and he is

21   asking the Court to recommend that the BOP provide him with a

22   mental health assessment and subsequent treatment, if

23   necessary.

24          I have nothing further, Your Honor.

25          THE COURT:  Thank you, Mr. Gibbons.

1          Mr. Townshend, anything on behalf of the

2    government?

3          MR. TOWNSHEND:  Your Honor, if I understand the

4    argument correctly, the motion for a downward variance is

5    primarily based on Mr. Densmore's personal characteristics.

6          The government will discuss in its allocution and

7    briefed extensively in its sentencing memorandum the other

8    3553(a) factors, the nature and seriousness of the offense,

9    the need for specific and general deterrence in these cases.

10          I'd highlight also the need for just punishment for

11    what Mr. Gibbons correctly described as deplorable conduct.

12    Again, we've briefed that.  I will address that in a summary

13    fashion in my allocution.

14          But with respect to Mr. Densmore's personal

15    characteristics, I just want to highlight for the Court that

16    while the government agrees he was honorably discharged from

17    the military and certainly is not in a position to question

18    family support at this time, the government does disagree

19    about his ability to conform his conduct and his knowledge

20    that what he did was wrong.

21          I think the record is clear in terms of his ability

22    to conform his conduct, the PSR makes mention of this as well,

23    that in the chats that the government entered into the record

24    as part of its exhibits, Mr. Densmore was involved in trying

25    to ferret out and kick out people that were suspected law

1    enforcement from these Discord chats.  And as the PSR recites,

2    every time one of his Sewer servers was shut down because of

3    the illegal activity, he created another one.  I don't think

4    the record supports that he has the ability to conform his

5    conduct because he didn't for quite a while.

6          Also, in terms of his knowledge that what he did was

7    wrong, again, I know I'm harping on this, and I did in my

8    sentencing memo as well, Mr. Densmore claimed that his victim

9    for Count 1 was not affected.  And so, as you'll hear me say

10   in my allocution, I'm not sure that he understands right from

11   wrong.  I'm not sure he understands the significance of this

12   conduct and the real world consequences.

13         So the government just can't agree that his history

14   and his characteristics, particularly the characteristics he

15   showed during the offense conduct, warrant a downward

16   variance.  Thank you.

17         THE COURT:  Thank you.  Any other -- I guess, if

18   there's any other allocution, Mr. Gibbons, I mean, separate

19   and apart.

20         MR. GIBBONS:  Yeah.  Your Honor, I did pretty much

21   combine my allocution in support of the motion for variance.

22   So I have nothing further to say.

23         THE COURT:  Mr. Townshend, same for you?  Any --

24         MR. TOWNSHEND:  I do have some allocution, Your

25   Honor.

1          THE COURT:  Thank you.  Absolutely.  Sometimes it's

2    kind of a mixed statement, but go ahead.

3          MR. TOWNSHEND:  You know, Your Honor, and, again, the

4    point here is not to be preaching, but this was one of the

5    most vicious offenses I've ever had to be involved in in my

6    time with the government.

7          Your Honor, I was at an event over the weekend where

8    the charge to people was, to kind of paraphrase John Wesley,

9    you know, doing all the good you can, in all the ways you can,

10   in all the places you can, to all the people you can.

11         And it struck me that Mr. Densmore followed a

12   grotesque perversion of that mandate, not doing good but doing

13   harm.

14         He's convicted of crimes against children, the

15   substantial penalties for which, I think, reflect correctly

16   that these are some of the most heinous acts someone can

17   commit.

18         This doesn't take place in the virtual world of

19   Discord or Telegram.  This is the real world.  This affects

20   real children and has very real lasting and, I think,

21   far-reaching consequences.

22         We've talked a lot in our sentencing memorandum about

23   the 764 connection, and I will address that.

24         But I don't want the Court to lose sight of the

25   conduct underlying the other counts.  And the government will,

1    of course, dismiss those counts as part of its plea agreement.

2         But remember the kind of child pornography that

3    Mr. Densmore kept.  The PSR talks about a picture of a

4    three-year-old with her hands and feet tied to a bed and a

5    ball gag in her mouth with, lick me, please, written on her

6    stomach.  A video of a five-year-old being penetrated by an

7    adult male who is biting a stuffed animal and wincing in pain.

8    I don't want the Court to lose sight of the heinous nature of

9    the child pornography that Mr. Densmore kept.

10         It's also important, I think, to recognize, as

11   paragraph 22 of the PSR states, that he instructed his victim

12   in Count 1, Jane Doe, to go out and find other girls to

13   victimize, other girls to do cut shows, other girls to do cam

14   shows, and if she couldn't find other people, to do it

15   herself.  That's the nature of the conduct here, and that's

16   even before, Your Honor, we get to the 764 connection.

17         And I think it's important to recognize this wasn't

18   just child exploitation to satisfy a sexual perversion, but

19   also conduct in service of a broader nihilistic ethos.

20         764 is part of Mr. Densmore's motive and his

21   identity.  And the fact that he had someone carve 764 Rabid

22   into themselves and saved a picture of that bloody wound to

23   keep as a trophy tells you all you need to know about his

24   commitment to that -- to that group.

25         This is a group and it's part of a larger network of

1  groups that grow through people like Mr. Densmore, and the

2  goal is to exploit and desensitize youth child by child.  And

3  I think it's important in this case that the Court's sentence

4  reflect that one way we need to address this threat is through

5  punishment member by member.

6         And finally, Your Honor, as I indicated with my

7  response to the motion for a downward variance, Mr. Densmore

8  claimed all of this was just bored trolling and that victims

9  weren't affected.  And as I said, I'm deeply concerned that he

10 doesn't understand right from wrong, that he doesn't

11 appreciate the consequences of his actions, and he's used the

12 global reach of the internet to remain a dangerous and ongoing

13 threat to children.

14        And, Your Honor, you know, I've asked myself a lot

15 during this case what to do when seeing is not believing.  The

16 things I've seen and the things I think we've -- the

17 selections we've provided to the Court, what do you do when

18 you cannot believe, cannot admit to yourself that this kind of

19 heinous conduct takes place in the world?  And I think the

20 answer, at least professionally, is to take action.  And the

21 government did that by charging this case, and the government

22 would respectfully request that the Court also take action and

23 impose that 30-year maximum guideline sentence on

24 Mr. Densmore.

25        THE COURT:  Thank you, Mr. Townshend.

1          Mr. Gibbons, I will give you an opportunity if you

2    want.  But otherwise, I'll hear from the defendant.

3          MR. GIBBONS:  Your Honor, I've said everything I need

4    to say here on the record and in my brief.  And I will leave

5    the Court to Mr. Densmore.

6          THE COURT:  All right.  Thank you.

7          Mr. Densmore, anything you wish to say prior to

8    sentencing?  You don't have to say anything, but if you want

9    to, this is your only opportunity.  You can stay seated.

10          THE DEFENDANT:  I rely on my lawyer, and I'm sorry.

11          THE COURT:  Thank you.  It's the Court's duty to

12    impose a sentence that is sufficient but not greater than

13    necessary to comply with the purposes of sentencing set forth

14    in 18 USC 3553(a).

15          To be quite honest, that language, sufficient but not

16    greater than necessary, we say it all the time, it seems like

17    we say it weekly, I don't know that those words can encompass

18    the behavior in this case.  I don't know how you can -- how

19    you can determine what is sufficient but not greater than

20    necessary.  But that's the purpose, and that's the -- that's

21    the mandate.

22          The guidelines are advisory to the Court.  They are

23    advisory, not mandatory anymore.  But they are an initial

24    benchmark, and they are a factor that the Court considers in

25    making an individualized assessment, and I'm certainly making

1    a very individualized assessment in this case, as I do in

2    every case.

3            The Court recognizes its discretion pursuant to

4    Supreme Court and Sixth Circuit precedent.

5            And I don't believe any of the arguments that

6    Mr. Gibbons has made are frivolous, and so I'm certainly

7    considering all those nonfrivolous arguments.

8            The motion for a variance is somewhat intertwined

9    with the 3553(a) factors that the Court has to look at, and

10    those factors include the nature and circumstances of the

11    offense and the history and characteristics of the defendant.

12            The nature and circumstances of the offense in this

13    case, like I said, I don't even know how you quantify a

14    sufficient but not greater than necessary sentence, as have

15    been described this morning as deplorable.  I read somewhere

16    in everything that I've read as this conduct as being

17    depraved.  I don't even know if those words truly describe the

18    behavior.  So the seriousness of the offense, it can't be

19    overstated.

20            There is so much in terms of what the defendant did,

21    what he encouraged others to do, and what he sort of mandated

22    others to do that further exploited children.  Not only did he

23    exploit, abuse children, he encouraged others to do it.  He

24    encouraged children to cut themselves, to bleed, in addition

25    to the sexual exploitation.  This involved multiple minor

1    victims, as has been indicated, some very young.  And all for

2    his sexual gratification, and all for his also power that he

3    had over these minors and encouraging them to -- into this

4    activity that he -- that numerous people were watching and I'm

5    sure numerous people were recording.

6        Those images and those videos will never go away for

7    those victims.  They are out there for other sexual deviants

8    to share and to trade, and the defendant had a huge role in

9    producing those and in distributing them and sharing them and

10   making that all available on these servers that he -- that he

11   created time and time again.

12       In addition to that, there is this other element of

13   this 764 extremist group that he is involved in.  And

14   certainly their purposes are no where near honorable in terms

15   of what they want to do, and all of that is this type of

16   behavior that he was engaged in.  I don't --

17       Mr. Townshend, I don't know that I agree with you

18   when you say he doesn't understand.  I think he understands.

19       Mr. Densmore, I think you understand.  I think you

20   don't care.  And, quite frankly, that is even more dangerous

21   than you not being aware.

22       I was struck by the statements that are pretty

23   routine that I usually see.  In this Presentence Investigation

24   Report, it's paragraph 31.  Those questions and statements are

25   usually so routine that it almost normally takes me a second

1    to look at them because they're almost always the same in

2    terms of the probation department asking what is it that makes

3    you think you're guilty and what behavior and how has this

4    affected you or victims or others.

5              I was struck by and astounded by the defendant's

6    answers.

7              This is paragraph 31.  Please describe what you did

8    that makes you guilty of this offense.

9              I told someone to tell their girlfriend to send a, a

10   nude picture two years ago.

11             That's not all you did.  It wasn't a picture.

12             THE DEFENDANT:  Three years ago.

13             THE COURT:  I'm sorry?

14             THE DEFENDANT:  It was three years ago.

15             THE COURT:  Again, I don't care that it was two or

16   three years ago.  It's -- I don't think it was one picture.

17   That's my point.

18             Why did you get involved?

19             I was bored and trolling.

20             How has your behavior in this case affected the

21   victim?

22             This is astounding to me.

23             We are friends and have been for two years.  She is

24   not affected.

25             Yes.  You indicate that your family is worried.

1    Apparently your friends are not affected.

2            How has your behavior in this case affected your

3    community?

4            Unaffected is your answer.

5            This is the type of behavior that affects any

6    community and specifically these victims in the most horrible

7    way.  And I think, again, I don't think you don't understand.

8    I think you don't care.

9            How do you feel about your actions?

10           I'm doing everything I can to change my ways.  I feel

11   bad about my actions.

12           To be quite honest, I don't think that's genuine.

13           What could you have done differently to avoid being

14   involved in this case?

15           I wasn't thinking about the consequences of my

16   actions.

17           What will you do to stay out of the criminal justice

18   system in the future?

19           Find better hobbies.

20           Again, that's astounding to me that this was

21   considered a hobby.

22           I don't see any remorse in there.  I don't see any

23   real acknowledgement of the consequences of your actions.  So,

24   again, I think you were fully aware of what you were doing and

25   understood it and you just didn't care and you wanted to

1    continue doing it and you would have continued doing it had

2    the government not stepped in.  So the nature and

3    circumstances of the offense and the seriousness of the

4    offense are great.

5         In terms of your history and characteristics, from

6    what I can tell, you had a somewhat stable upbringing.  Raised

7    by your mother and your grandmother in a mostly financially

8    secure environment.  So there's nothing about your upbringing

9    that is unusual.

10        I do acknowledge a mental health history for a

11   borderline personality disorder diagnosis that came in the

12   late 1990s.  There is some depression and anxiety history and

13   a history of self harm.

14        There's not much, if any, substance abuse history.

15        I do acknowledge that you completed high school and

16   that you served in the United States Army after high school

17   and served about six years and were honorably discharged, and

18   so I do acknowledge that service as well.

19        From your employment history, it looks like it was

20   mostly sporadic.  I don't know how much, if any, employment

21   history you had.  And it seems in the last -- in the last

22   however many years, it's been -- you've been supported by

23   unemployment benefits and government assistance.  So I do look

24   at your history and characteristics.

25        I also look at the need for the sentence to impose --

1    or to promote respect for the law, to provide just punishment,

2    to afford adequate deterrence, and I think deterrence is one

3    of the more serious, as well as the seriousness of the

4    offense.

5         This group that you're involved in, whether it's you

6    and just one other person or a heck of a lot more people, I

7    hope this sentence rings loud and clear to anyone else that's

8    involved in this group that this will be your punishment if

9    this type of behavior continues.  And certainly protecting the

10   public is intertwined with all of that, and the Court

11   considers that a factor that's very much warranted in this --

12   in this sentence.

13        In looking at fashioning a sentence that is

14   sufficient but not greater than necessary, in looking at all

15   the kinds of sentences available and in trying to avoid

16   sentencing disparities, and looking at your

17   educational/vocational needs or any other programming needs, I

18   do acknowledge that you certainly need and I will recommend

19   that you undergo a mental health evaluation and treatment as

20   the Bureau of Prisons deems.  I think the Bureau of Prisons

21   does place individuals like Mr. Densmore in certain facilities

22   where they can get those services, but I'll make that

23   recommendation as well.

24        There is also the need to provide restitution, that

25   restitution that is allowable by law, as well, for the Court

1    to consider.

2        In looking at all of these factors and in looking at

3    the motion for a variance, I can't say what I have just said

4    and think that the motion for a variance can be granted.  I

5    understand there's a significant five-level enhancement, and

6    it's appropriate, especially in a case like this.  So I think

7    there's really -- that does not sway me in terms of providing

8    a variance, and I don't think the mental health history

9    overrides all the -- these other factors that the Court has to

10   consider.  So the motion for a variance is denied.

11       And pursuant to the Sentencing Reform Act of 1984,

12   it's the judgment of the Court that the defendant Richard

13   Densmore is hereby committed to the custody of the Bureau of

14   Prisons to be imprisoned for a term of 360 months.

15       Upon release from prison, you'll be placed on

16   supervised release for a term of ten years.

17       Within 72 hours of release from the custody of the

18   Bureau of Prisons, you'll report in person to the probation

19   office in the district to which you are released.  While on

20   supervised release, you'll comply with mandatory and standard

21   conditions of supervision, including DNA collection and drug

22   testing -- I'm sorry.  Drug testing is suspended.  You'll

23   comply with DNA collection and sex offender registration.

24   Additionally, you'll comply with the following special

25   conditions of supervision:

1    You must participate in a program of mental health

2    treatment, as directed by your probation officer, follow the

3    rules and regulations as directed by your probation officer,

4    and you must pay at least a portion of the cost according to

5    your ability, as determined by your probation officer.

6    You must participate in a sex offender assessment

7    and/or treatment, as approved by your probation officer, which

8    will include physiological testing, such as a polygraph,

9    and/or ABEL Assessments.  You will contribute to the cost of

10    treatment in an amount approved by the probation officer and

11    waive your right to confidentiality while involved in the

12    treatment.

13    Your residence and employment must be pre-approved by

14    the probation officer.

15    You must not associate or have any contact with

16    convicted sex offenders, unless in a therapeutic setting and

17    with the permission of the probation officer.

18    You must not be employed in any position or

19    participate as a volunteer in any activity that involves

20    contact with children under the age of 18, except as approved

21    by the probation officer.

22    You must have no contact with minors under the age of

23    18 without the written approval of the probation officer and

24    must refrain from entering into any area where children

25    frequently congregate including but not limited to parks,

schools, daycare centers, theme parks, theaters, and
playgrounds.

You must not associate with persons under the age of
18, except in the presence of a responsible adult who is aware
of the nature of your background and criminal offenses, and
who has been approved in advance by the probation officer.

You must not date or socialize with anyone who has
children under the age of 18 without the permission of the
probation officer.

You must not have any contact with the victims in
this case.  This includes any physical, visual, written,
electronic, or telephonic contact with any of these persons.
Additionally, you must not directly cause or encourage anyone
else to have such contact with any of the victims.

You must not possess or publicly display any
materials that may be viewed as lures for children, including
but not limited to children's games, toys, videos, or clothing
without prior approval of the probation officer.

You must not purchase or possess photographic or
video equipment without the prior knowledge and permission of
the probation officer.

You must not possess any materials depicting any
sexually-explicit conduct as defined by federal law and state
law including visual, auditory, telephonic, or electronic
media, and computer programs or services.

1          You must not patronize any place whose primary

2     purpose is to promote such materials or entertainment.

3          You must advise the probation officer of all

4     pornographic materials and sexual items or devices you own or

5     possess, and you must not own or possess any sexually

6     stimulating or sexually oriented materials, items, or devices

7     deemed inappropriate by the probation officer or by treatment

8     staff.

9          You must consent to third-party disclosure to any

10    employer or potential employer concerning any

11    computer-related restrictions or community risks related to

12    you.

13          You must use only those computers and/or

14    computer-related devices approved in advance by the probation

15    officer.

16          You must provide the probation officers with all

17    usernames, e-mail addresses, passwords, social media accounts,

18    and any other forms of internet identification, and you must

19    not create additional accounts, unless approved in advance by

20    the probation officer.

21          You must not have any other individual access the

22    internet on your behalf to obtain files or information which

23    you are restricted from accessing yourself or accepting files

24    or information from other persons.  You must not have another

25    individual do that.

1    You must participate in the computer internet

2  computer monitoring and must comply with the rules of the

3  program as directed by your probation officer.  You must pay

4  the cost of computer monitoring as directed by the officer and

5  advise anyone in your household that any computer or computers

6  in the household may be subject to computer searching.

7    You must submit your person, property, house,

8  residence, vehicle, papers, computers, or other electronic

9  communications or data storage devices or media or office to a

10  search conducted by a U.S. probation officer.  Failure to

11  submit to a search may be grounds for revocation of release.

12  You must warn any other occupants that the premises may be

13  subject to searches pursuant to this condition.  The probation

14  officer may conduct a search under this conduction only when

15  reasonable suspicion exists that you've violated a condition

16  of supervision and that the areas to be searched contain

17  evidence of this violation.  Any search must be conducted at a

18  reasonable time and in a reasonable manner.

19    It is further ordered that you'll pay the United

20  States a special assessment of $100, which is due immediately.

21  It's ordered that you'll pay a $5,000 special assessment under

22  the provisions of the Justice for Victims of Trafficking Act

23  of 2015, which shall be due immediately, unless the Court

24  determines that you're indigent, and I have not made that

25  determination.

1          The Court finds that you don't have the ability to

2    pay a fine.  However, the Court will waive the fines in this

3    case.

4          Restitution is not going to be ordered as it's

5    outlined in the Presentence Investigation Report, as no

6    victims have submitted any loss determinations as it relates

7    to this specific count.

8          The Court will waive any interest on special

9    assessments and restitution in this case.

10         You'll start paying as it relates to these monetary

11   penalties in minimum quarterly installments of $20 or $25

12   during the time that you're incarcerated to commence 60 days

13   after the date of the judgment.  Any balance due upon

14   commencement of supervision must be paid during the term of

15   supervision in minimum monthly installments of $100 to

16   commence 60 days after you're released from prison.

17         Additionally, you must apply all monies received from

18   income tax refunds, lottery winnings, judgments, or any other

19   anticipated or unexpected financial gains to any outstanding

20   court-ordered financial obligations.

21         Mr. Townshend, you have counts that you are going to

22   dismiss?

23         MR. TOWNSHEND:  Your Honor, at this time, the

24   government would dismiss Counts 2 through 5 of the

25   indictment.

THE COURT:  All right.  The Court will grant that motion.

Pursuant to Bostic, are counsel satisfied that I've addressed on the record all nonfrivolous arguments that have been asserted?

MR. TOWNSHEND:  Yes, Your Honor.

THE COURT:  Mr. Gibbons?

MR. GIBBONS:  Yes, Your Honor.

THE COURT:  Any legal objections to the sentence that's been imposed?

MR. TOWNSHEND:  No, Your Honor.

MR. GIBBONS:  No, Your Honor.

THE COURT:  All right.  Mr. Densmore, I'm going to advise you of your appellate rights.

You can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there's some other fundamental defect in the proceeding not waived by your guilty plea.  You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law.

You have the right to apply for leave to appeal in forma pauperis.  If you wish to do so, with a few exceptions, you'll need to file appropriate documents within 14 days of the entry of judgment, and your attorney will prepare and file a Notice of Appeal upon your request.

1    Mr. Densmore, do you acknowledge that I've advised

2    you of your appellate rights?

3    THE DEFENDANT:  Yes.

4    THE COURT:  All right.  And, Mr. Gibbons, you

5    understand your obligation to speak with him as it relates to

6    those appellate rights, and if he wishes to pursue that, to

7    file the appropriate paperwork with the Sixth Circuit?

8    MR. GIBBONS:  I have, and I do.

9    THE COURT:  All right.  Thank you.  Anything else

10   from anyone?

11   MR. GIBBONS:  Your Honor, if I could, just for

12   clarification.  I just want to make sure the Court is

13   recommending that Mr. Densmore be placed in a sexual offender

14   type housing situation.

15   THE COURT:  Yes.  Like I said, I don't ultimately --

16   I don't have the authority to mandate that the Bureau of

17   Prisons place anybody in any particular facility, but I will

18   make the recommendation that he be placed in a facility that

19   can address or a facility that houses sexual offenders and

20   that can address treatment options for him.

21   MR. GIBBONS:  Very good.  Thank you, Your Honor.

22   THE COURT:  Anything else?

23   MR. GIBBONS:  No.

24   MR. TOWNSHEND:  No, Your Honor.

25   THE COURT:  All right.  Thank you, everyone.

1                    THE CLERK:  All rise.  Court is adjourned.

2                         *(Concluded at 10:53 a.m.)*

*REPORTER'S CERTIFICATE*

       I, Trisha N. Cameron, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a full, true and correct transcript of the proceedings had in the within entitled and numbered cause on the date hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.


/s/ Trisha N. Cameron

Trisha N. Cameron
CSR, RMR, CRR, RDR
U.S. District Court Reporter
128 Federal Building
315 West Allegan Street
Lansing, Michigan 48933
(517) 270-4735